The final case on calendar for argument today is Spangler v. County of Ventura. Counsel for Appellant, please approach and proceed when ready. Good morning, Your Honors. May it please the Court? My name is Jeff Price. I represent the plaintiff and the appellant in this case. And we are here because the rules require the District Court, when ruling on a summary judgment motion, to believe the plaintiff's evidence, to discern the evidence in the light most favorable to the plaintiff, the non-moving party, and to draw all justifiable inferences in favor of the plaintiff. Counsel, before we go any further, regardless of how this case is resolved, please accept the condolences of the Court on behalf of the mother of the young man who was killed in this case. Thank you very much, Your Honor. I will. I will tell her. So, as the Court alluded to, this involved a tragic incident involving the death of a young man. And the reason we are here is to enforce the rules because the District Court did not follow those rules in its ruling on the summary judgment motion. The District Court jumped to a conclusion that this was a high-speed chase and then analyzed the case under the well-established law, including the Bing v. Prunchak case and the County of Sacramento v. Lewis case. Maybe I can ask this. I mean, the facts are undoubtedly tragic. The question, though, is what is your theory as to how Officer, is it Schneecloth, was, what did he do wrong? Because it seemed that the theory below primarily was that his vehicle had impacted the motorcycle and then your expert acknowledged that there wasn't evidence of that. So what is the theory of liability here? Well, the expert, and I described this in the briefs, the expert, our expert, made a statement that could be interpreted, which was interpreted by the Court, I believe incorrectly, as stating that he didn't find evidence of an impact. That is not the same as the proposition that there may have been an impact. What impact? What evidence is there to support the proposition that there was an impact? There's the evidence of the statement of Defendant Schneecloth in his deposition that when he was ascending the slope, he lost sight of the edge of the slope and he could only see blue sky. There was circumstantial evidence. But what does that mean in terms of an impact, though? Well, there is circumstantial evidence, as stated in the reply brief, that as his vehicle ascended the hill behind the motorcycle, and that is supported by the death investigation report, that his vehicle forced the motorcycle off of the top of the precipice. And that is also supported by the scientific evidence presented by the two experts, primarily the plaintiff's expert, which shows that the motorcycle did not go airborne off of the slope, but that it essentially rolled or fell down the slope. That its velocity upon leaving the top of the slope was very low, in the order of 5 miles to 10 miles per hour. So that is consistent with the circumstantial evidence that the officer ascended the slope after the motorcycle, and I know there is the evidence from the woman who was in her office across the street who I believe couldn't really see anything. But that is consistent with the officer's vehicle ascending the slope and forcing the motorcycle off of the top of the slope. And that would not necessarily result in physical evidence to the motorcycle that would be indicative of a physical collision. You've been choosing your words carefully, and I think for good reason. But an argument that says the evidence is consistent with or not inconsistent with isn't evidence sufficient to support a verdict. And the question here becomes what evidence was there upon which a reasonable jury could reach the conclusion to enter a verdict in favor of your client on this claim. And I've got to say, it's bits and pieces, but I don't see anything that knits them together to make any kind of prima facie case, and if you don't have a prima facie case, entry of summary judgment in favor of defendants appropriate. So tell me why it is I should be persuaded that, in fact, the officer did force the decedent off the top of the hill. Well, one thing, Your Honor, is the officer makes varying statements. And, for example, in his interview, which took place on the same day, which was December 17th, he describes the scenario and he states that the motorcycle, he believed, was traveling about 40 miles per hour at the base of the hill. That, as testified to by our expert, could not have been the case, according to our expert, and that is uncontroverted. So what we have, what we see here, is the officer attempting to create a narrative that is different from what really happened. Because the motorcycle- But he has a different impression. Maybe he's doing it deliberately. Maybe he's not. All you have is a testimony that his estimate as to what a rate of speed was at the bottom of the hill, which logically is not going to be the same as the rate of speed at the top of the hill, differs from what the expert's talking about. I don't see how that proves an impact. Yes, I understand. It's difficult. If there's not evidence to support a verdict that says there was an impact, there's some re-judgment. Well, the evidence simply is that if you start with what I call the scientific evidence and you look at the impact of the motorcycle on the downslope of the hill and then where the motorcycle ended up, that leads you to the conclusion that the motorcycle was traveling very slowly relatively upon- I'll accept that. I'll accept that as a factual proposition. But that may simply tell me that as you go up the hill, the motorcycle slows down, but because you can't see clearly what's ahead, doesn't come to a stop, and so goes off the top at a 5 to 10 miles per hour speed. That doesn't tell me anything about whether there was contact between the officer's car and the motorcycle. And the argument is that Deputy Schneekloff was actually traveling up the hill at the same time that the motorcycle was and that he couldn't see anything because of the fact that he was driving an SUV, which is the position of his body was several feet off of the ground and because the slope was about 27 degrees, as he is looking up, which he admitted in his deposition, he could not see anything. Well, he didn't say he could not see anything. He's talking about seeing blue sky. He's also talking about seeing horizon out the side. But let's just go to the front. He's not saying I couldn't see an object in front of me that I'm striking. Because the ground is below that. If there's a motorcycle in front of him, there's no reason to think he can't see that because of the slope, because both the truck and the motorcycle are going to be on the same slope. So you really can't infer from his testimony something that says I can't see a motorcycle in front of me. He's not talking about an object in front of him. I believe he is because he cannot see the horizon. But the motorcycle sticks above the horizon. If you're going up a hill, even if you can't see the horizon, indeed, the rental car I've got this week, my wife complains that she can't even see the hood of the car. But if there's an object, a car, a truck, a motorcycle in front of us, you can see that because it sticks above the horizon. It's possible. It's possible. But it also changes. No, his testimony that he can't see the horizon can't be used to support the proposition so I can't see a motorcycle in front of me. Because you can see a motorcycle in front of you. I mean, I've driven too many hills to accept your recharacterization of his testimony as saying he couldn't see that there was a motorcycle there. And that doesn't establish contact anyway because there is no evidence that I found in the record that supports the proposition of contact. If you look at the evidence in the light most favorable to the plaintiff. No. You have to decide whether a reasonable jury could reach that conclusion. Is there a prima facie case? It doesn't mean accepting guesswork and speculation. It means could a reasonable jury reach that conclusion? Agreed. Where's the evidence that would support a prima facie case here? The evidence, I would say, is that the motorcycle went over the cliff. Well, it's going to go over the cliff either way. How does that demonstrate contact? I don't know if it was going to go over the cliff either way, Your Honor. But the evidence is that it did go over the cliff at a very low rate of speed, which is completely inconsistent with the testimony of Officer Schneekloff that the motorcycle was traveling 40 miles per hour at the base of the hill. At the base of the hill. How is that inconsistent? Well, the expert testified that even if the motorcycle were traveling 40 miles per hour at the base of the hill and he did not have any throttle on the motorcycle, that the motorcycle would only be traveling 25 miles at the top of the hill. That is impossible. That did not happen. If the motorcycle had been traveling 25 miles at the top of the hill, the motorcycle would have landed on the railroad tracks. The motorcycle did not land on the railroad tracks. The motorcycle landed on the back side of the hill. Did you want to save any time for rebuttal, counsel? Yes, Your Honor. Thank you. All right. Thank you. Good morning, counsel. Good morning, Your Honors. May it please the Court. Rocco Zambito, Jr. representing the County of Ventura and Deputy William Schneekloff. In granting summary judgment as to Plaintiff's 14th Amendment cause of action, the District Court properly applied the intent to harm standard based on the repeated split-second decisions Deputy Schneekloff was forced to make in attempting to apprehend a fleeing suspect, here the decedent. However, regardless of your conclusion as to the proper standard to be applied, the District Court's ruling should be affirmed for two reasons. First, because there's no evidence that Deputy Schneekloff acted with even deliberate indifference, a standard which requires proof of egregious and outrageous conduct. But more clearly, because there is no affirmative evidence provided by the plaintiff from which a reasonable inference can be made that Deputy Schneekloff caused decedent's death through the application of force. That conclusion has been conceded to by the plaintiff in her response to the county's attorney's fees motion. The plaintiff has never provided any evidence of contact. The plaintiff has never provided any evidence that Deputy Schneekloff caused decedent's death through any other means. The plaintiff has not even appealed the District Court's finding that there was no evidence of contact. And on that lack of evidence alone, the District Court's ruling should be affirmed and your analysis need go no further. At the same time, we've provided a plethora of evidence to show that there was no contact between these two vehicles. There was three accident reconstruction experts, all who testified they found no evidence of contact, including plaintiff's own accident reconstruction expert, who testified to his conclusion that it was most likely that decedent's motorcycle rolled off the hill upright on its wheels with decedent in a riding position. In addition to these experts, three witnesses have also testified, including independent witness Arlene Curry, who testified that she was watching the incident. She saw a decedent drive off the hill on his own volition in a fluid motion and that there was no possible way there could have been contact between the two vehicles. All of this evidence shows that no reasonable jury could conclude that there was contact between the sheriff's SUV and decedent's motorcycle. Moreover, in establishing our 14th Amendment cause of action, plaintiff was also required to prove that Deputy Schneekloff had intent to harm decedent. However, she conceded that there was no intent to harm by Deputy Schneekloff. And thus the district court properly applied the intent to harm standard in granting summary judgment. Where do you say she conceded that point? It was in response to the county's attorney's fees motion. She stated that there was no physical evidence of contact between the two vehicles. That may be, but what about the intent? I thought you said she conceded that there wasn't an intent to harm. Yes, and the response to the county's separate statement in support of the summary judgment motion, it was conceded that Deputy Schneekloff did not have any intent to harm the decedent. But even if the deliberate indifference standard was applied, the results should still be the same here. Deliberate indifference requires proof of egregious conduct sufficient to shock the contemporary conscience. Here Deputy Schneekloff was simply pursuing a fleeing suspect. This is what we would want our officers to do. In proving deliberate indifference, plaintiff would need to show that Deputy Schneekloff was aware of a substantial risk of severe harm caused by his conduct. Here it's also undisputed that Deputy Schneekloff did not know that the hill came to a drop-off shortly after its peak. And it's also undisputed that Deputy Schneekloff believed that decedent had successfully traversed the hill and was on his way to a clean escape. With those facts being undisputed, it could not be said that he was aware at all that driving up that hill would in any way pose any risk to decedent. Your Honors, the facts of this case, I agree, they're extremely tragic. But they're also simple, and where relevant, they're undisputed. Decedent was under the influence of highly toxic levels of methamphetamine, and he simply made a series of poor decisions which led to his very unfortunate death. However, there's no evidence that Deputy Schneekloff caused his death. There's no evidence that Deputy Schneekloff intended any harm to decedent. There's no evidence that Deputy Schneekloff acted with deliberate indifference. And with that, I would ask that you affirm the District Court's rulings. And if there are no further questions, I will yield the balance of my time and submit on the briefs. Thank you, Counselor. Thank you. Here's John. Repodo. I would like to state, Your Honors, that the District Court's conclusion that the case was frivolous was based on its erroneous conclusion that a purpose-to-harm standard was required here. And by the words of Deputy Schneekloff himself, a purpose-to-harm standard was not the applicable standard. Deputy Schneekloff himself testified or stated in his interview that took place the same day of this incident that Mr. Brewer was not endangering the public, that he was continually slowing down, and that he was probably looking for a place to stop. Where in the record is that statement? That is in 3 ER 51-604. That is part of the interview of Deputy Schneekloff. And he stated without hesitation or qualification that Mr. Brewer was slowing down, so therefore the high-speed chase that may or may not have been occurring earlier, and the reason I say may or may not is because Deputy Schneekloff also stated in his statement that he believed that Mr. Brewer didn't even know that he, Defendant Schneekloff, was behind him at some point earlier in the ride. And Deputy Schneekloff also testified or stated in his statement that he did not believe this was a pursuit. So on those grounds, I believe the part of the district court's judgment finding the case frivolous should be overturned. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are on recess until 930 a.m. tomorrow morning. All rise. This court for this session stands adjourned.
judges: Rawlinson, Clifton, Bress